## UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF WEST VIRGINIA

**DALLAS MICHAEL ACOFF,**

      **Plaintiff,**

**v.**                                                   **Case No. 5:16cv78**
                                                         **(Judge Stamp)**

**SGT. JOHN R. GORBY and MICHAEL**
**CROGAN [sic],[1] C.O.**

      **Defendants.**

### REPORT AND RECOMMENDATION

### I.  Procedural History

On June 6, 2016, the *pro se* Plaintiff, then a state pre-trial detainee incarcerated at the Northern Regional Jail ("NRJ") in Moundsville, West Virginia, initiated this case by filing a civil rights complaint against the above-named Defendants pursuant to 42 U.S.C. § 1983. ECF No. 1. Along with his complaint, Plaintiff filed a motion to proceed in forma *pauperis* with supporting documents, and a certificate of service. ECF Nos. 2, 3, 4 & 5.  On July 21, 2016, Plaintiff was granted permission to proceed as a pauper and directed to pay an initial partial filing fee ("IPFF"). ECF No. 10. On August 11, 2016, Plaintiff paid the IPFF. ECF No. 12.  On October 4, 2016, the undersigned conducted a preliminary review of the complaint, determined that summary dismissal was not warranted at that time and directed the Defendants to answer the complaint. ECF No. 14.  On October 27, 2016, the Defendants filed a Motion to Dismiss with a memorandum in support, attaching a copy of an Incident Report and a DVD of the video of the incident. ECF Nos. 19 & 20. Because Plaintiff was proceeding *pro se*, on October 31, 2016, a <u>Roseboro</u>[2] Notice was issued.  ECF

---

[1] Apparently the correct spelling of Defendant Crogan's surname is Croghan.  The Clerk will be directed to correct the docket.

[2] <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975).

No. 21.  Plaintiff filed some photographs of his face on November 1, 2016 [ECF No. 22], and a response in opposition on November 14, 2016.  ECF No. 24.  On December 5, 2016, Defendants filed a reply.  ECF No. 25.

Accordingly, this case is before the undersigned for review, report and recommendation.

## II. Contentions of the Parties

### A. Plaintiff's Complaint

In the complaint, the Plaintiff raises excessive force claims against the Defendants, both employees of the NRJ, contending that they violated his Eighth Amendment rights. Plaintiff asserts that on an unspecified date, after he asked Defendant Crogan why he was searching cell for the third time, Croghan pushed him into his cell. ECF No. 1 at 7.  Plaintiff also alleges that Defendant Gorby then strapped him into a chair in booking and maced him; two officers grabbed his legs to strap them down; and then Gorby grabbed his neck, choked him, pushed his finger in his eye, and hit him in the other eye.  Id. at 8.

Plaintiff contends he suffered cuts and burns on his face, eye and neck as a result of the incident. Id. at 9.

Plaintiff appears to maintain that he has exhausted his administrative remedies with regard to these claims. Id. at 4 -  6.

The Plaintiff seeks unspecified relief, stating "I want the court to sue on my behalf for the jail and co's broke my eighth amendment [sic]."  Id. at 9.

### B. Defendants' Motion to Dismiss[3]

The Defendants contend that the complaint must be dismissed, because

1) Defendants are entitled to qualified immunity [ECF No. 19 at 1];

---

[3] Because the Defendants attached exhibits to their motion to dismiss, it will be construed herein as a motion for summary judgment.

2) Claims against Defendants in their official capacities are not permitted under 42 U.S.C. § 1983 and must be disregarded for purposes of determining whether Plaintiff has stated a claim uon which relief can be granted [id.];

3) Plaintiff's claims fail to allege Eighth Amendment violations and must be dismissed as a matter of law [id.];

4) Plaintiff does not state a cognizable excessive force claim [id. at 11]; and

5) Plaintiff failed to exhaust his administrative remedies.  Id.

**C. Plaintiff's Response to Defendants' Motion to Dismiss**

Plaintiff reiterates his claim that his rights were violated, contending that the incident should have been videotaped to ensure that all staff actions were done according to protocol.  He also avers that he has character witnesses who will back up his allegations.  Accordingly, he asserts that he would like to proceed to trial, noting that he will be seeking legal representation. ECF No. 24 at 1 – 2.  He does not address any of Defendants' arguments.

**D.  Defendants' Reply**

Defendants note that Plaintiff's response fails to address any portion of their dispositive motion and that Plaintiff's claims are merely conclusory allegations that are insufficient to prove an Eighth Amendment violation. ECF No. 25 at 1 – 4.  They reiterate their claim that Plaintiff's claims are barred by their qualified immunity. Id. at 4 – 5.

### III. Standard of Review

**A. Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a case when a complaint fails to state a claim upon which relief can be granted. Dismissal under Rule 12(b)(6) is inappropriate unless it appears beyond doubt that the plaintiff cannot prove any set of facts to support his or her allegations. Revene v. Charles County Comm'rs, 882 F.2d 870 (4th Cir. 1989).  Courts, however, are not required to accept conclusory allegations couched as facts and nothing more when ruling on a motion to dismiss pursuant to 12(b)(6). A complaint must include "more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do . . . ." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct.1955, 167 L. Ed.2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u>

To survive a motion to dismiss a plaintiff must state a plausible claim in his complaint that is based on cognizant legal authority and includes more than conclusory or speculative factual allegations. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" because courts are not bound to accept as true a legal conclusion couched as a factual allegation. <u>Id.</u>; see also <u>Nemet Chevrolet, Ltd. v. Comsumeraffairs.com</u>, Inc., 591 F.3d 250 (4th Cir. 2009). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." <u>Id.</u>

Whether a complaint is legally sufficient is measured by whether it meets the standards for a pleading stated in the Federal Rules of Civil Procedure. <u>See</u> Fed.R.Civ. P 8 (providing general rules of pleading), Fed.R.Civ. P. 9 (providing rules for pleading special matters), Fed.R.Civ. P. 10 (specifying pleading form), Fed.R.Civ. P. 11 (requiring the signing of a pleading and stating its significance), and Fed.R.Civ. P. 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted.) <u>Francis v. Giacomelli</u>, 588 F.3d 186 (4th Cir. 2009).

Acoff is representing himself, which requires the Court to liberally construe his pleadings. <u>Estelle v. Gamble</u>, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251(1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)(per curiam); <u>Loe v. Armistead</u>, 582 F.2d 1291 (4th Cir. 1978); <u>Gordon v. Leeke</u>, 574 F.2d 1147 (4th Cir. 1978). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, <u>Haines</u>, 404 U.S. at 520, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. <u>Id.</u> at 520-21. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on

which the plaintiff could prevail, it should do so. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. Small v. Endicott, 998 F.2d 411 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274 (4th Cir. 1985).

Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30 (1st Cir. 2001)(cited with approval in Witthohn v. Federal Ins. Co., 164 Fed. Appx. 395 (4th Cir. 2006) (unpublished)). There are, however, exceptions to the rule that a court may not consider any documents outside of the complaint. Specifically, a court may consider official public records, "documents incorporated into the complaint by reference, and matters of which the court may take judicial notice," or sources "whose accuracy cannot reasonably be questioned." Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462 (4th Cir. 2011).

**B. Motion for Summary Judgment**

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the  motion and of establishing the nonexistence of genuine issues of fact. Celotex, 477 U.S. at 323. Once "the moving party has carried its burden under Rule

5

56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita, 475 U.S. at 586. The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.' Anderson, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, 475 U.S. at 587.

## IV. Analysis

### A. Exhaustion under §1997e

Under the Prison Litigation Reform Act of 1995 (PLRA), as amended, prisoners must exhaust the grievance procedure in the institution where they are incarcerated prior to filing suit in federal court challenging prison conditions. 42 U.S.C.A. §1997e(a). In Jones v. Bock, the United States Supreme Court held that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints," nor do they have the burden of proving it. 549 U.S. 199, 216 (2007); see also Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).[4] Further, the Court has held that "proper exhaustion" is required, meaning that the inmate must follow the prison's administrative rules as required, including when and how to file the complaint. See Woodford v. Ngo, 548 U.S. 81 (2006).

Despite the fact that the Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements," Booth v. Churner, 532 U.S. 731, 741, n.6 (2001),

---

[4] A district court may also raise the affirmative defense of exhaustion *sua sponte*, so long as the Plaintiff is given an opportunity to respond. See Anderson v. XYZ Corr. Health Svcs., Inc., 407 F.3d 674 (4th Cir. 2005).

several courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances. See Ziemba v. Wezner, 366 F.3d 161, 163 (2nd Cir. 2004) (defendant may be estopped from asserting exhaustion as a defense when defendant's actions render grievance procedure unavailable); Mitchell v. Horn, 318 F.3d 523, 529 (3rd Cir. 2003) (summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to complete administrative exhaustion); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (remedy not available within meaning of § 1997e(a) when prison officials prevent a prisoner from utilizing such remedy); Aceves v. Swanson, 75 F. App'x 295, 296 (5th Cir. 2003) (remedies are effectively unavailable where prison officials refuse to give inmate grievance forms upon request). Indeed, the Fourth Circuit has held that "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). Further, the Supreme Court recently held that

> there are three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief. First, an administrative procedure is unavailable when it operates as a simple dead end--with officers unable or consistently unwilling to provide any relief to aggrieved inmates. Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use--*i.e.*, some mechanism exists to provide relief, but no ordinary prisoner can navigate it. And finally, a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation.

Ross v. Blake, 136 S.Ct. 1850, 1853 - 54 (2016)

Finally, where exhaustion is not apparent from an inmate's pleading, "a complaint may be dismissed on exhaustion grounds so long as the inmate is first given an opportunity to address the issue." Custis v. Davis, 2017 U.S. App. LEXIS 5147 *10 (4th Cir. 2017)(quoting Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

The West Virginia Jail and Correctional Facility Authority's *Handbook of Inmate Rules and Procedures*[5] sets forth the following five step process for grievances:

> 1. If an inmate wishes to use the grievance procedure, jail personnel will provide the inmate with an inmate with an inmate grievance form.

> 2. The inmate shall complete the form, addressed to the Administrator; the form, as completed by the inmate, shall be transmitted to the Administrator's office by jail personnel without being read or altered and within a reasonable time, not later than the end of the shift.

> 3. The Administrator upon receipt of the grievance may reject the grievance if it appears on its face to have been filed in bad faith.

> 4. The Administrator, if the grievance is not rejected pursuant to Paragraph 3, shall provide the inmate an opportunity to be heard before a decision is made on the grievance. The Administrator may assign a staff member to investigate the complaint and report written findings within forty-eight hours and shall inform the inmate of such action.

> 5. The Administrator shall provide a written decision with regard to the grievance to the grieving inmate within twenty-four (24) hours of the receipt of the investigation report. Such written decision shall include a statement of the action taken concerning the grievance, the reasons for such action, and procedures for appeal of the decision.

Further, if an inmate is dissatisfied with the Administrator's decision, he must file an appeal to the Executive Director within five days of the receipt of the Administrator's decision, and must include a copy of the initial complaint and the Administrator's decision.

Although it is not the Plaintiff's burden to plead exhaustion, the §1983 form complaint of this Court inmates are required to use asks if the inmate followed the grievance procedure and directs them to attach copies of their grievances and responses.  Here, although Plaintiff did not attach copies as instructed in his complaint, he avers that he filed a grievance, but he does not identify the grievance procedure numbers in which the clams he raises in this complaint were raised, or state the results those grievances received at levels one, two and three; instead, he left the entire section blank. ECF No. 1 at 4 – 5. Subsequently, however, in the next section, inquiring about *previous* lawsuits

---

[5] Available at: http://apps.sos.wv.gov/adlaw/csr/readfile.aspx?DocId=18978&Format=PDF

and administrative remedies dealing with the same facts involved in the present action, and asking if he had sought informal or formal relief from the appropriate administrative officials regarding the acts complained of, Plaintiff checked "no" and stated "I felt I had to go over there [sic] head's [sic] and they was under minding [sic] my situation." Id. at 5 – 6. Nonetheless, he checked the box "yes" when asked if he had exhausted available administrative remedies, but then elaborated "I wrote grievance's [sic] and statement's [sic] about the situation talked to the Lt's [sic] and talk [sic] to Charlston [sic] I have picture's [sic] and videos down here at the jail." Id. at 6.

Defendants assert that Plaintiff admits he did not seek informal or formal relief from the appropriate administrative officials, because he "felt he had to go over their heads and they were undermining his situation . . . thus, Plaintiff has admittedly not utilized the above described administrative procedures in regards to any of the claims described in his Complaint." ECF No. 20 at 11.

Plaintiff's response in opposition makes no mention of exhaustion. ECF No. 24.

The undersigned finds that the Plaintiff's ambiguous and contradictory answers regarding whether he exhausted and his failure to attach copies of grievances do raise a question of fact as to whether he did fully exhaust. Plaintiff, a *pro se* filer, has not specifically alleged that the Defendants interfered with his attempts to exhaust or that grievance system at the facility was effectively unavailable to him for any of the reasons set forth in Ross, 136 S.Ct. at 1853 – 54. Nor has Plaintiff availed himself of the opportunity to address the issue in his response to Defendants' dispositive motion. See Custis, 2017 U.S. App. LEXIS 5147 at *10. Nonetheless, the undersigned does not agree with Defendants' conclusion that Plaintiff did not fully exhaust, either, given that Defendants were in a position to clarify the record by producing copies of all of the grievances Plaintiff filed, to definitively prove the matter, but failed to do so. The record on the issue is unclear. Accordingly, Plaintiff's claims will be decided on the merits.

**B. Excessive Force**

In general, the Eighth Amendment prohibits "cruel and unusual punishment." Farmer v. Brennan, 511 U.S. 825 (1994). Because it appears that the Plaintiff was a pre-trial detainee at the time of the alleged assault, his claim would be governed by the Due Process Clause of the Fourteenth Amendment instead of the Eighth Amendment. Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979); Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988). Nonetheless, pre-trial detainees are subject to the same protection under the Fourteenth Amendment that prisoners receive via the Eighth Amendment. Hill v. Nicodemus, 979 F.2d 987, 999 (4th Cir. 1980).

In order to comply with the Eighth Amendment, prison punishment must comport with "the evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102 (1976). "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. at 837.

Moreover, while courts should give deference to a jail official's determination of what measures are necessary to maintain discipline and security, "the unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment which is prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 321 - 22 (1986). In order for a plaintiff to prove a claim of excessive force, the plaintiff must first establish that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Norman v. Taylor, 25 F.3d 1259, 1262 (4th Cir. 1994) (en banc), cert. denied, 513 U.S. 1114 (1995)(quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)). Second, the plaintiff must show that the prison officials inflicted unnecessary and wanton pain and suffering. Hudson, 503 U.S. at 6; Williams v. Benjamin, 77 F. 3d 756 (4th Cir. 1996).

With regard to prison disturbances, whether unnecessary and wanton pain and suffering was inflicted "ultimately turns on whether force was applied in a good faith effort to maintain or restore

discipline or maliciously and sadistically for the very purpose of causing harm.'" Whitley, 475 U.S. at 320-21. In determining whether the defendant acted maliciously and sadistically, the following factors should be balanced: (1) "the need for application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of the injury"; (4) the threat reasonably perceived by the responsible official; and (5) "any efforts made to temper the severity of a forceful response." Id. at 321; see also Williams, 77 F. 3d at 762.

Moreover, in the Fourth Circuit, "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is *de minimis*." Norman, 25 F.3d at 1263. In Norman, a jail officer swung his cell keys in the direction of the prisoner's face when the prisoner became disruptive. The prisoner asserted that he put his hands up to cover his face and the keys hit his thumb, causing his hand to swell. The Court ruled that the prisoner sustained *de minimis* injuries, proving that *de minimis* force was used. Further, in Taylor v. McDuffie, 155 F.3d 479 (4th Cir. 1998), *cert. denied*, 525 U.S. 1181 (1999), the Fourth Circuit found that a detainee who received "abrasions on his wrists and ankles, slight swelling in the jaw area, tenderness over some ribs and some excoriation of the mucous membranes of the mouth" as a result of an incident had sustained *de minimis* injuries. On the other hand, the United States Supreme Court has found that "bruises, swelling, loosened teeth and a cracked dental plate" are not *de minimis*. Hudson 503 U.S. at 10.

Although a *de minimis* injury reveals that *de minimis* force was used, Id. at 1262, the Fourth Circuit has held that in certain circumstances, a claim may be made even if the injury is *de minimis*. Specifically, the Fourth Circuit has stated:

> There may be highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in an impermissible infliction of pain. *Cf.* Hudson, 503 U.S. at ----, 112 S.Ct. at 1000 ("diabolic" or "inhuman" physical punishment unconstitutional, regardless of injury). In these circumstances, we believe that either the force used will be "of a sort 'repugnant to the conscience of mankind,' and thus expressly outside the *de minimis* force exception, see Hudson, 503 U.S. at ----, 112 S.Ct. at 1000 (citations

omitted), or the pain itself will be such that it can properly be said to constitute more than *de minimis* injury.

Norman, at 1264, n. 4.

Recognizing the principle that an injury does not have to be visible to be impermissible, the Fourth Circuit has held that "[m]ankind has devised some tortures that leave no lasting physical evidence of physical injury." Williams v. Benjamin, 77 F.3d 756, 762 and 762 n.2 (4th Cir. 1996)(inmate was strapped down, spread-eagled, for 8 hours in 4-point restraints after being sprayed with mace and not permitted to wash it off, use a toilet, or receive medical attention). See also Jordan v. Gardner, 986 F.2d 1521, 1526, 1546 (9th Cir. 1993) (*en banc*)(the psychic pain female prisoners suffer when subjected to cross-gender pat down search satisfies the objective component of an 8th Amendment analysis, i.e., whether an injury inflicted is sufficiently serious). Consistent with this principle, the Fourth Circuit has held that the beating of a handcuffed inmate about the head and neck by prison guards, one of whom held the inmate's cuffed hands, in retaliation for his "mere use of a racial slur" may be force "of a sort 'repugnant to the conscience of mankind," even though the injuries sustained by the inmate were not severe. Melvin v. North Carolina Department of Corrections, 1995 U.S. App. LEXIS 23300 at *3 (4th Cir. Aug. 21, 1995) (per curiam) (unpublished) *quoting* Norman v. Taylor, *supra* at 1263 n.4.

In this case, the Plaintiff alleges that on an unspecified date, he asked Defendant Croghan why he was searching cell for the third time; in response, Croghan pushed him into his cell. ECF No. 1 at 7. Plaintiff alleges that Defendant Gorby then strapped him into a chair in booking and maced him; two officers grabbed his legs to strap them down; Gorby grabbed his neck and choked him, pushed his finger in his eye, and hit him in the other eye. Id. at 8. Plaintiff contends he suffered cuts and burns on his face, eye and neck as a result of the incident. Id. at 9.

Defendants argue that on April 17, 2016, Defendant Croghan smelled alcohol in the vicinity of the Plaintiff s cell, No. 12. ECF No. 20 at 2. The tower officer also advised Croghan that there was

an unusual amount of inmate activity going on in cells 11, 12, and 15. Id. Defendant Croghan went to the area to investigate. When he tried to enter Plaintiff's cell, Plaintiff blocked him from entering while inmate McDaniels was busy flushing unknown items down the toilet. Id. Croghan reportedly pushed the Plaintiff aside to get enter the cell, but by the time he gained entry, McDaniels had already finished flushing the items. Id. Croghan completed a search of the cell; locked it; and reported the incident to Defendant Sgt. Gorby.   Id. Sgt. Gorby then ordered both inmates to lock down for obstructing an officer, creating a disturbance, and for being in the wrong cell. Id. The Plaintiff again refused to comply; he was given multiple commands to comply, but repeatedly refused to cooperate. Id. Eventually, officers had to open the cell and release pepper spray to gain Plaintiff's compliance. Id.   Plaintiff still refused to cooperate. After more commands, the Plaintiff finally complied, was cuffed, and taken to medical to be checked.   Id. He was then taken to booking and placed in a restraint chair. Id. Once in the chair, Plaintiff continued to refuse to comply; he thrashed and fought, getting one leg loose. When officers attempted to regain control, Plaintiff began thrashing his head wildly. Id. Sgt. Gorby and C.O. Eddy [sic] attempted to use the hypoglossal pressure point, but were ineffective, then used the jugular notch pressure point to finally regain control and successfully restrain Plaintiff in the chair. Id. Defendants contend that the video of the incident shows no evidence of Sgt. Gorby punching the Plaintiff in the eye, and that the attempts to get Plaintiff out of his cell and into the restraint chair are captured on video, which they have produced with their memorandum in support of their dispositive motion.   Id.

Finally, Defendants assert that an investigation of the incident revealed that the sole cause of the incident was Plaintiff's repeated refusal to obey orders. Id. at 3. All staff interviewed during the course of the investigation stated that no unnecessary action was taken and all staff followed WVRJ policy. Id. The conclusion of the investigation was that all staff involved acted within the policy and procedure of the WVRJA. Id. In support of this, Defendants attach an April 26, 2016 WVRJ&CFA

Incident Report from Capt. Matt Stocklask to Administrator Shawn Straughn, attesting to the same

facts recited *supra*. See ECF No. 20-1 at 1. Further, the report notes in pertinent part that

> I [also] spoke with inmate Acoff who states the officers had no reason to do what
> they did, and alleges that while they were trying to restrain him is when Sgt. Gorby
> punched him in the eye area. Inmate Acoff's sworn statement is attached. I then
> spoke with inmate McDaniels who stated that inmate Acoff and COI Croghan had a
> confrontation that COI Croghan pushed him back and they exited the cell. He also
> reports that Acoff did refuse several orders and did throw his milk at the door;
> McDaniels reports that he then put his shirt over his face to avoid the pepper spray.
> He states that after that[,] he did not see any of the actions taken by Acoff or officers.
> He felt the officers were fair to him. In consideration of all of the evidence, video,
> and sworn statements[,] it is clear that all staff involved acted well within the Policy
> & Procedure of the WV Regional Jail Authority.

ECF No. 20-1 at 2. Defendants contend they have produced a copy of the video on DVD. ECF No.

20 at 3.

Plaintiff produced five poor-quality, close-up, black and white photographs of his face and

head. ECF No. 22. His response in opposition avers that the photos were taken by family members

during visitation the day after the incident. ECF No. 24 at 1. He repeats his claim of constitutional

rights violations and argues that incidents involving inmates like his are to be videotaped to ensure

that all staff behave according to protocol. Id. He also avers that his photographs and unspecified

"character witnesses" will support his allegations. He does not attempt to refute any of Defendants'

arguments and does not address the Defendants' allegations regarding the reason he was restrained in

the first place.

Defendants' reply notes that Plaintiff's response fails to address any portion of their

dispositive motion. They contend that Plaintiff only makes three assertions: that he has photos of

injuries; there is video of the incident, and he has undisclosed character witnesses, none of which are

responsive to the substance of their motion to dismiss. Therefore, they conclude, Plaintiff's

complaint does not state any plausible allegations, only conclusory, bare bones assertions, devoid of

factual enhancement, insufficient to prove an Eighth Amendment violation. ECF No. 25 at 1 – 2.

Moreover, the photos do not show any injury; video of the incident shows that Defendants' acted

solely to maintain or restore discipline; and Plaintiff does not identify any witnesses or suggest what they might have seen. Id. at 2 – 4. They reiterate their claim that Plaintiff's claims are barred by their qualified immunity. Id. at 4 – 5.

As previously noted, the Plaintiff identified two separate incidents on the same day at the NRJ during which he alleges that the Defendants used excessive force.

First, Plaintiff's bald assertions notwithstanding, there is no evidence to suggest that Defendant Croghan pushed Plaintiff into his cell in a malicious or sadistic attempt to cause harm. Although this push was not captured on video because it occurred before the incident ever escalated to the point that video was indicated, Plaintiff only alleges that Defendant pushed him into his cell; he alleges no injury. Defendants aver that Croghan pushed past Plaintiff, who was trying to obstruct Croghan's entry into the cell to buy time for his cell mate McDaniels to dispose of the presumed alcohol contraband by flushing it down the toilet. As such, Croghan's push was a reasonable, good-faith effort to maintain or restore discipline and was not done maliciously and sadistically to cause harm. Plaintiff's statements with regards to this claim amounts to conclusory allegations unsupported by specific facts. He has alleged no injury at all with this claim, let alone any *de minimis* injury. The undersigned finds that such allegations fail to state an Eighth Amendment claim upon which relief can be granted and because there is no genuine issue of triable fact, Plaintiff cannot prevail on this claim.

Next, the undersigned has reviewed the video footage of the incident on DVD produced by Defendants. There are two sections of video; the first is the footage of Defendant Mike Croghan and other correctional officers' attempts to get Plaintiff to comply with being removed from the cell to be taken to "the hole," for his role in the alcohol-related incident. The second section of footage is the Defendants and other officers' attempts to subdue Plaintiff to get him into the restraint chair. Review of the videos will be taken in turn.

15

A review of the 10 minute, 25 second video of Plaintiff's removal from his cell begins at 17:57 hours. The officers first identify themselves for the officer operating the camera; they are: Cpl. Ramage, Mike Croghan, Seth Eddy, and John Stevens.  The officer operating the camera does not identify himself. The officers arrive outside of Acoff's apparently locked cell door 39 seconds into the video, announce their presence and purpose: to take him to "the hole." One of the officers directs Acoff to "turn around away from me, get on your knees, put your hands on your head." Plaintiff and his cell mate are visible through the window in the cell door; Plaintiff approaches the door several times, peers through the glass at the officers and replies "no, no, no." The officer repeats "do what I tell you."" Plaintiff ignores the directives.  He then appears to be leaning over the bottom bunk, packing his belongings, while his cell mate paces about. The officers direct Plaintiff to "get on the bunk."  He ignores the instruction.  One minute and twenty-six seconds into the video, the officer says "I'm telling you for the last time, turn around, away from me."  Acoff ignores the instruction; occasionally shouts a curse, and at one point replies "I'm packing my shit." The officer replies "I've told you what to do three times."  Finally, two minutes and 26 seconds into the video, the officers open the cell door partway, one of them sprays two quick blasts of pepper spray inside, then quickly closes the door.  Incoherent yelling is heard inside the cell, along with coughing; Plaintiff and his cell mate are visible through the window moving about, Plaintiff has his back to the door and appears to be wiping his eyes and face.  The officer calls out again "Acoff!"  Acoff responds by slamming a carton of milk across the cell; it hits the window and splatters milk everywhere.  The officer says "you ready? Come on, man. You ready?  Get on your knees."  Plaintiff repeatedly refuses to comply, saying "come on, come on," and "I *ain't* getting on my knees!  Ima turn around, I'm *NOT* gettin' on my knees!"  At one point, an officer says "you're gonna stay in there till you do."  Plaintiff slams his hand on the door, yells incoherently, wiping his eyes.  His responses are often inaudible and difficult to hear through the closed cell door, but at one point, he can be heard swearing and saying repeatedly "that shit burns."

16

Acoff never does get on his knees; instead, he repeatedly challenges the officers to "come on in! Ima go to the hole," then repeating "I'm not getting' on my knees!  Come on! Come on! That shit burns." The guards advise him to "calm down, let's go, come on Acoff, let's go." Finally, six minutes and 19 seconds into the video, the officers say "come on Acoff, turn around. You ready?  You move, you're gonna get it." Acoff finally turns and stands with his back to the cell door; the officers enter; He does not resist when they cuff him behind his back and remove him from his cell.  The footage shows a long walk up a hallway, beginning six minutes and 45 seconds into the video, an officer on either side of Plaintiff, until at eight minutes and 57 seconds, they enter a room and wait at a desk. Plaintiff attempts to pick up a roll of toilet paper from the desk.  Defendant Croghan takes it from him, unwinds a length of tissue and hands it to Plaintiff, who is unable to raise it to his face because his hands are cuffed behind his back. Croghan asks "where you need it?" Plaintiff replies "my nose." Croghan holds it up and Plaintiff leans into Croghan's gloved hand and blows his nose. A woman enters, briefly asks Plaintiff questions; the only audible one was whether Plaintiff was suicidal.  He denies it.  She then walks behind him out of view, but can be heard questioning the officers; the conversation is inaudible and the video ends.

The second video shows Plaintiff already in the restraint chair with his shoulders, both wrists, and his left ankle already strapped down. He is wearing an orange top and pants and is in his stocking feet; his tennis shoes and some part of an orange uniform are on the floor to the right of the chair. He is surrounded by four officers, two at his head, one of whom is Defendant Gorby, and the other, an officer with gray hair, incorrectly identified by Defendants as C.O. Eddy, and two who are attempting to strap his right ankle down, one of whom is Defendant Croghan, the other, Officer John Stevens.  Plaintiff appears calm at the outset, saying "I don't got no problems, bro, take me to my cell."  However, when Defendant Croghan begins to try to strap his right ankle, Plaintiff suddenly begins lunging wildly, repeatedly kicking his free leg up and to the side to avoid having it strapped down, while lunging his head and trunk forward and from side to side in the chair, twisting his head

wildly and appearing to try to bite the hands of Gorby and the gray-haired officer who are trying to hold his head still. Gorby and the gray-haired officer try to restrain Plaintiff's head to keep it facing forward, presumably so Plaintiff cannot bite them; they struggle to hang onto Plaintiff's face, then finally, they apply pressure to Plaintiff's jugular notch pressure point.  At this point, Plaintiff says "why you grabbing my throat? Why you grabbing my fucking throat? You *chokin'* me?" while he continues to thrash about and from side to side in the chair.  Gorby shouts "Comply! Comply! Put your leg down! Put your leg down!"  Officer John Stevens leans forward, pressing Plaintiff's right thigh down against the seat of the chair while Defendant Croghan attempts to apply the strap to Plaintiff's right ankle. There is much shouting and cursing; it is not apparent who all is doing it. Finally, 26 seconds into the video, Croghan succeeds in strapping Plaintiff's right ankle down, and then moves to Plaintiff's left ankle, briefly tightening that strap.  Gorby and the gray-haired officer then tighten the Y-shaped harness strap around Plaintiff's shoulders to pull Plaintiff's torso snugly against the back of the chair.

Once fully restrained, the officers exit to the left of the camera.  The camera pans over Plaintiff's face. Plaintiff looks directly at the camera and turns his head from side to side.  Two officers whose identities are not apparent return, one of them is carrying what looks like a piece of cloth; they approach Plaintiff's chair from behind and one reaches over Plaintiff's head and applies a mesh "spit mask" to Plaintiff's head, then that officer pats him on the shoulder, saying "you ain't gonna be no trouble," before both officers walk away down a hall to the left with the others and an additional officer whose face is not visible. An unseen correctional officer continues to shout incoherently back at Plaintiff as he walks away off camera, saying something about "____with black hair" and "that f----ing whore" and "you wanna start that shit? F__k you, f__k you!!  God damn you!" Plaintiff shouts something back at him.  After the officers walk away, Plaintiff appears restless but calmer; he swings his knees in and out, but no longer lunges or resists the chair. He does not appear injured.  He nods his head repeatedly, looking directly at the cameraman, and says "where's

the mother? Where? Where? Where? I don't have a problem with that. We'll talk, we'll talk. Somebody get me outa this chair, we'll talk, we'll talk." He says something inaudible to the cameraman who appears to say something back to the effect that "you ain't got nothing," before the one minute and 23-second video ends.

As an initial point, while the Defendants contend that they have produced video showing their attempts to get Plaintiff out of his cell and into the restraint chair, as noted *supra*, a review of the same reveals that it is apparent that the Defendants have not provided the court with the *complete* video of Plaintiff being placed in the restraint chair, given that at the beginning of the video, Plaintiff is *already in* the chair with his shoulders and three limbs restrained.  Either the video footage has been deliberately truncated to remove the first part, or the filming did not resume until Plaintiff was already in the chair.

Nonetheless, it is apparent from the portion of video that was produced that Plaintiff's excessive force claims have no merit.  At the conclusion of the struggle, when the camera pans across Plaintiff's face and he turns his head from side to side, Plaintiff appears uninjured. Although African-American, his skin is very light; there are no visible bumps, bruises, red marks or abrasions near either eye.  Even after having been exposed to pepper spray earlier, the conjunctiva of his eyes do not appear red or irritated to indicate such exposure, or suggesting someone deliberately poked him in the eye. The only visible mark on Plaintiff's face at all is an approximately 1 ½ inch, horizontal pale pink mark below his left cheekbone, not surprising given the violent struggle while two officers attempted to hold onto his head with their hands.  Accordingly, it is obvious that Plaintiff had no cuts or burns on his face, eye, or neck, as he contends.  Likewise, the black and white photos Plaintiff produced, although indistinct and not of good quality, show no evidence of injury. Even if Plaintiff had proven that the Defendants used excessive force, "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is *de minimis*." Norman, 25 F.3d at 1263.

Plaintiff's claim that two officers grabbed his leg to strap it down accurately describes what happened. Plaintiff's contention that Gorby grabbed his neck is also accurate, insofar as Gorby and the other officer attempted to restrain Plaintiff's head and prevent him lunging, resisting, and biting their hands when they attempted to subdue him long enough so that Defendant Croghan could finish strapping his right ankle down. Neither Gorby nor the other officer attempted to "choke" Plaintiff. Rather, they applied pressure to the jugular notch pressure point, just above Plaintiff's sternum, to get Plaintiff to stop resisting. While Gorby and the other officer did inadvertently have to pull on Plaintiff's neck, it was only in reaction to Plaintiff's wildly flailing his head while violently resisting, trying to bite their hands, disobeying their orders to comply. The video shows no attempts to injure or excessively restrain Plaintiff. To the contrary, once Plaintiff was completely and safely restrained, all officers immediately let go of his head and walked away.  Therefore, it appears that the force used was only that which was necessary to gain control over Plaintiff.

Accordingly, there is no evidence to suggest that Defendant Sgt. Gorby maliciously or sadistically strapped Plaintiff into a chair and then maced him, grabbed his neck and choked him, punched him in one eye and pushed his finger in the other, as Plaintiff's complaint contends. While it is true that video the earlier portion of Plaintiff's being restrained was not produced, there is no suggestion by either party in the record that Plaintiff was exposed to pepper spray twice.  The video clearly establishes that the pepper spray was not fired at Plaintiff *after* he was placed into the restraint chair, as Plaintiff contends. Rather, it was fired into the Plaintiff's cell long before he was extracted, cuffed, walked down the hall, seen in medical, and placed in the restraint chair, and it was only used then after Plaintiff repeatedly and defiantly failed to follow instruction from Defendants Crogan, Gorby and other officers. Moreover, use of the spray was in compliance with protocol established by the WVRJ&CFA. Therefore, with respect to this incident, it is clear that the forced used was applied in a good-faith effort to maintain or restore discipline and not maliciously and sadistically to cause harm.

Accordingly, Plaintiff's claims are mere allegations or denials of the pleadings; he has not set forth specific facts showing that there is a genuine issue for trial. <u>Sprenkle v. Hartford Life Ins. Co.</u>, 84 F. Supp. 2d 751 (N.D. W.Va. 2000). Even when drawing all reasonable inferences in Plaintiff's favor, based on the Plaintiff's version of the events, the Defendants' responses, the Incident Report, and the undersigned's review of the video of the incidents on DVD, it is clear that no genuine issues of triable fact exist. Therefore, the Plaintiff cannot prevail on his claims of excessive force, and he has failed to state a claim upon which relief can be granted.

## V. <u>Recommendation</u>

In consideration of the foregoing, it is the undersigned's recommendation that the Defendants' Motion to Dismiss, construed herein as a Motion for Summary Judgment [ECF No. 19] be **GRANTED** and that Plaintiff's Complaint [ECF No. 1] be **DENIED and DISMISSED with prejudice.**

**Within fourteen (14) days** of being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of Court is **DIRECTED** to correct the spelling of Defendant Croghan's surname on the docket from "Crogan" to "Croghan."

The Clerk is further directed to mail a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket

sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation electronically to all counsel of record.

DATED: May 31, 2017

/s/ James E. Seibert\
JAMES E. SEIBERT\
UNITED STATES MAGISTRATE JUDGE